# Exhibit A

# THE PATE LAW FIRM

P.O. BOX 370 • CHRISTIANSTED • SAINT CROIX, USVI 00821
OFFICE: 340.777.7283 • FAX: 888.889.1132 • EMAIL: PATE@SUNLAWVI.COM

May 31, 2023

The Prentice-Hall Corporation System, Inc.
*Registered Agent for: GLENCORE LTD.*
251 Little Falls Drive
Wilmington, Delaware 19808

**Re:  Service of Process:**
       **for Byron Peterson, Sr., SX-2023-CV-90**
       **and Martin Matthew, SX-2023-CV-92**

Dear Glencore Limited,

Please find enclosed Summons and Complaints filed in the Superior Court of the Virgin Islands for **Byron Peterson, Sr., SX-2023-CV-90** and **Martin Matthew, SX-2023-CV-92**.

The applicable timeframe for filing responsive pleadings is thirty (30) days from receipt of service of process. If a longer time is desired, please have Glencore's litigation counsel contact my office and we can work out a stipulated extension.

Best Regards,

J. Russell B. Pate, Esq.
Attorney at Law

# SUMMONS

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CRIOX

| | | |
|---|---|---|
| Byron T. Peterson, Sr., | ) | Civil No. **SX-2023-cv-90** |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Action for Damages |
| Glencore, Ltd., *and* | ) | |
| John Doe, Inc., | ) | |
| Defendants, | ) | **JURY TRIAL DEMAND** |

**TO:** The Prentice-Hall Corporation System, Inc.
**Registered Agent for: GLENCORE LTD.**
251 Little Falls Drive
Wilmington, Delaware 19808

Within the time limited by law you are hereby required to appear before this Court and answer this Complaint filed against you. In case of your failure to appear or answer, a judgment by default will be taken against you for damages.

This 31st day of MAY 2023.

KOREY A. NELSON, ESQ.
H. RICHARD YELTON, ESQ.
BURNS CHAREST LLP
365 CANAL STREET, SUITE 1170
NEW ORLEANS, LA 70130
TELEPHONE: (504) 799-2845
FACSIMILE: (504) 881-1765
KNELSON@BURNSCHAREST.COM
RYELTON@BURNSCHAREST.COM
JSOYKA@BURNSCHAREST.COM

**Tamara Charles**
**Clerk of the Court**

J. RUSSELL B. PATE, ESQ.
The Pate Law Firm (V.I. Bar No: 1124)
P.O. Box 370, Christiansted, USVI 00821
Office: (340) 777-PATE (7283)
Fax:   (888) 889-1132
Pate@SunLawVI.com | SunLawVI@gmail.com

**NOTE:** The defendant, if served personally, is required to file his answer with the Clerk of this Court, and to serve a copy upon the plaintiff's attorney within twenty (20) days after service of this summons, excluding the date of service. See, SUPER. CT. R. 32. The defendant, if served by publication or by service outside of the jurisdiction is required to file his answer with the Clerk of this Court, and to serve a copy upon the attorney for the plaintiff within thirty (30) days after service outside of the jurisdiction. See, TITLE 5 V.I.C. §§ 112 and 4911.

## RETURN OF SERVICE

Service of the Summons and Third Party Complaint was made by me

( ) Dated: _____

Name of Server: _____ Title: _____

( ) Served personally upon the Third-Party Defendant. Place where served:

_____

_____

( ) Left copies thereof at the Third-Party Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and Third Party Complaint were left:

_____

( ) Other (specify) Certified Mail – Pursuant to 5 V.I.C. §4911(3)

### Statement of Service Fees

| Travel | Services | Total |
|---|---|---|

Declaration of Server

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                              Date                                                                    Signature of Server

                                                                                        _____
                                                                                                  Address of Server

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
March 15, 2023 01:00 PM
SX-2023-CV-00090
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| Byron T. Peterson,<br><br>        *Plaintiff,*<br>v.<br><br>Glencore Ltd., *and*<br>John Doe, Inc.<br><br>        *Defendants,* | SX-2023-CV-___90___<br><br>**Complex Litigation Division**<br><br>**ACTION FOR DAMAGES**<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff Byron T. Peterson brings this action for damages under the laws of the United States Virgin Islands, demands a trial by jury, and makes the following allegations based on information, belief, and investigation of counsel, except those allegations that pertain to Plaintiff, which are based on personal knowledge:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a citizen and resident of St. Croix, United States Virgin Islands.

2. Defendant Glencore Ltd. is a Swiss foreign business corporation, having its principal place of business in New York.

3. John Doe, Inc., is currently in an alleged involuntary Chapter 7 bankruptcy, under information and belief, to be spurious and specious. Defendant John Doe will be added as a Defendant when this bankruptcy is dismissed or when any automatic stay is lifted, as the Plaintiff intends to proceed against John Doe's legacy third-party general liability insurance policies – which are not considered an asset of the estate in bankruptcy.

4. This Court has subject matter jurisdiction pursuant to 4 V.I.C. § 76.

5. Venue is this District is proper pursuant to 4 V.I.C. § 78 because the conduct complained of in this Complaint was carried out in substantial part within this judicial division.

### FACTUAL ALLEGATIONS RE: THE PLAINTIFF

Complaint
*Byron T. Peterson v. Glencore Ltd., et. al.*

6. Plaintiff worked at the Alumina Refinery from 1989 to 2001.

7. During his work at the Alumina Refinery, Plaintiff worked as a pipefitter, turnaround worker, boilermaker, maintenance worker, laborer, process operator, and carpenter.

8. In the course of his employment at the Alumina Refinery, Plaintiff was exposed to bauxite ore dusts (and their constituents and waste products), caustic soda, asbestos-containing materials ("ACM"), and alumina dust.

9. Plaintiff used no or substandard respiratory protection during his employment at the Alumina Refinery. This protection was wholly inadequate to guard against the inhalation of toxic substances like bauxite, alumina, silica, caustic, and asbestos.

10. Plaintiff suffers from pneumoconiosis, which became evident 7/30/2021.

11. This disease is evidenced by a chest x-ray (read by a competent NIOSH-certified B-reader) a pulmonary function test (PFT), a physical examination, and a discussion and consideration of Plaintiff's work history, among other things.

12. Plaintiff's lung disease is characterized by shortness of breath, diminished lung capacity, and other respiratory ailments.

13. This disease and injury are the direct and proximate result of Plaintiff's repeated exposure to various toxic substances during his work at the Alumina Refinery.

14. Plaintiff's injuries are current and will continue for the rest of his life. He seeks recompense for his pain and suffering; his medical bills and anticipated medical needs in the future; and the diminution in quality and enjoyment of his life.

15. Plaintiff fears the progression of his respiratory symptoms and reasonably fears that he may develop cancer as a result of persistent exposure to toxic materials and substances.

16. Plaintiff is also at a medically and statistically significant increased risk of developing lung cancer, mesothelioma, and other cancers.

17. Plaintiff also seeks punitive damages, as Defendants' actions and inactions, separately considered, were outrageous because of a reckless indifference to Plaintiff's rights.

### FACTUAL ALLEGATIONS VIS-À-VIS INDUSTRIAL EXPOSURES

18. The U.S. Federal Government has long regulated the limits of industrial exposure to minerals, metals, chemicals, and other agents in the workplace. And the U.S. Virgin Islands has long regulated emissions of fugitive particulate matter.

19. Industry must take all reasonable steps to guard against the release of toxic dusts through sound engineering practices, procedures, and controls. They must conduct air and worker monitoring to assess the concentration of particulate matter.

20. Because engineering practices, procedures, and controls may not eliminate and/or reduce all dust generation, persons in industrial settings that could be exposed to excessive dust levels must be given proper, appropriate, and timely warnings, training, and personal protective equipment, including respiratory protection.

### FACTUAL ALLEGATIONS VIS-À-VIS THE ALUMINA REFINERY

21. An Alumina Refinery operated on St. Croix from the early- to mid-1960s to 2000. The Alumina Refinery refined bauxite ore into alumina (aluminum oxide).

22. Harvey Aluminum, Inc. built the Alumina Refinery. It leased the Alumina Refinery to its wholly-owned subsidiary, Harvey Alumina, Inc., which ran the refining operations and handled everything except for maintenance activities. Harvey Aluminum owned the appurtenances and equipment at the Alumina Refinery, which appurtenances and equipment were leased to Harvey Alumina. Harvey Aluminum also entered long-term contracts with mining companies for the purchase of bauxite ore to the Alumina Refinery. It shipped or arranged the shipment of purchased bauxite ore to the Alumina Refinery for refinement. Harvey Aluminum changed its name to Martin Marietta Aluminum, Inc. in approximately 1972.

23. Martin Marietta Aluminum, Inc. ("M/M Aluminum") succeeded to Harvey Aluminum's rights and obligations under the bauxite ore supply agreement(s). Harvey Alumina assigned its leasehold to Martin Marietta Alumina, Inc. ("M/M Alumina"), which assumed the obligations of the lease. As under previous management, M/M Alumina ran the bauxite refining operations, except for maintenance activities which M/M Aluminum handled. Also as under previous ownership, M/M Aluminum purchased bauxite ore, which it delivered to the Alumina Refinery for refining.

24. M/M Aluminum sold the Alumina Refinery to Martin Marietta Aluminum Properties, Inc. ("MMAP") in 1985. In turn, MMAP sold the Alumina Refinery to Virgin Islands Alumina Company ("VIALCO") in 1989.

25. VIALCO was the wholly-owned subsidiary of Glencore Ltd. at all times relevant to this action. It operated the Alumina Refinery from 1990 to 1995. Prior to operating the Alumina Refinery, VIALCO had not owned or operated any other alumina refinery. From 1990 to 1995, Glencore supplied VIALCO and the Alumina Refinery with bauxite ore.

26. During the years that the Martin Marietta family of companies and VIALCO owned and/or operated the Alumina Refinery, GEC was contracted to provide construction and maintenance services.

27. Bauxite is a naturally occurring material comprised of hydrated aluminum oxides and aluminosilicates, iron oxides, titanium dioxide, silica, beryllium, and mixtures of other materials; including, quartz, clay minerals, gibbsite [$Al(OH)$], boehmite [$ALO(OH)$], and diaspore [$ALO(OH)$]. Bauxite is the principle ore of alumina ($AL2O3$).

28. During the refining process, bauxite ore is, among other activities, crushed and ground, which continuously creates large amounts of dust. In his work at the Alumina Refinery, Plaintiff was in constant contact with, and exposed to, this unrefined bauxite dust and its constituents.

29. Caustic soda is added to the ground ore, some of which becomes airborne. In his work

Complaint
*Byron T. Peterson v. Glencore Ltd., et. al.*

at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled caustic soda dust.

30. The refinement process involves many hot processes that require the maintenance of high temperatures. To that end, the Alumina Refinery used ACM to insulate vessels, machinery, and pipe. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled ACM.

31. The finished alumina product is a white/silver powder. The alumina is highly susceptible to becoming airborne because of the prevailing trade winds. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled alumina dust.

32. The refinement process also generates a great deal of toxic industrial waste sometimes called "red mud". The chemical composition may include iron (III) oxide ($Fe_2O_3$), aluminum oxide ($Al_2O_3$), silicon dioxide ($SiO_2$), copper (II) oxide (CuO), sodium oxide ($Na_2O$), titanium dioxide ($TiO_2$), potassium oxide ($K_2O$), selenium trioxide ($Se_2O_3$), and vanadium pentoxide ($V_2O_5$), arsenic (As), lead (Pb), mercury (Hg), nickel (Ni), chromium (Cr), cadmium (Cd), as well as radioactive uranium and thorium. When red mud dries, it becomes chalky and airborne. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled red mud dust.

33. Alumina refiners have long understood the dangers posed by exposure to bauxite ore dust, its constituent components and waste products (including red mud), caustic soda, ACM, and refined alumina. Research shows that exposure to these elements (or mixtures thereof) in industrial settings can cause serious medical problems, including decreased FEV1, radiographic abnormalities, increased opacities, upper and lower respiratory symptoms (shortness of breath, wheeze, chest tightness, rhinitis), pulmonary fibrosis, mixed dust pneumoconiosis, interstitial fibrosis, fibrotic lesions, parenchymal changes, lung cancer, and aluminosis.

## CAUSES OF ACTION AGAINST GLENCORE LTD.

### Count 1 – Chattel Known to be Dangerous for Intended Use

34. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 388 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

35. Glencore supplied bauxite ore—a chattel—to the Alumina Refinery for use from 1990 to 1995. It expected or should have expected the Alumina Refinery and Plaintiff to use the bauxite ore, as well as expected or should have expected that Plaintiff could be endangered by the probable uses of bauxite ore—namely, refinement.

36. Glencore knew or had reason to know that bauxite ore, bauxite dusts and its constituents is dangerous or likely to be dangerous during the refinement process. It had no reason to believe that the Alumina Refinery or Plaintiff would realize the dangerous condition of bauxite ore, bauxite dusts and its constituents. And it failed to exercise reasonable care to inform either the Alumina Refinery or Plaintiff of the dangerousness of bauxite ore, bauxite dusts and its constituents or the facts which make bauxite ore, bauxite dusts and its constituents likely to be dangerous.

37. Plaintiff was harmed by the bauxite ore supplied by Glencore to the Alumina Refinery.

38. Glencore directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to bauxite dusts and its constituents, as well as the harm and damages Plaintiff sustained as a result of this exposure.

### Count 2 – Chattel Unlikely to be Made Safe for Use

39. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 389 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

40. If Glencore provided warnings and MSDS sheets to the Alumina Refinery, those warnings and MSDS sheets went unheeded. Glencore knew or should have known that any warnings

and sheets it may have provided were not being communicated to the workforce at the Alumina Refinery.

41.  Glencore knew or should have known that the bauxite ore was unlikely to be made reasonably safe before being put to the use Glencore should expect it to be put—namely, refinement into aluminum powder.

42.  Plaintiff was a foreseeable user of the chattel, as well as endangered by the probable use of the chattel. He was ignorant as to the dangerous character of bauxite ore, its hazardous constituents, and its waste products, and he was not contributorily negligent.

43.  Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

**Count 3 – Chattel for Use by Person Known to be Incompetent**

44.  Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 390 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

45.  Glencore knew or had reason to know that the owners and operators of the Alumina Refinery were using the bauxite ore supplied by Glencore in a manner that involved an unreasonable risk of physical harm to Plaintiff. It should have expected that Plaintiff would be endangered by the use of bauxite ore at the Alumina Refinery.

46.  In particular, Glencore knew or had reason to know that the Alumina Refinery owners and operators were incompetent. VIALCO had not previously owned or operated an alumina refinery prior to 1990 when it began operations in St. Croix. It failed to implement the necessary engineering controls to minimize worker exposure to bauxite, its constituent components, and waste products. It lacked an adequate respiratory policy to guard against the inhalation of bauxite dust, its constituent components, and waste products. It had a substandard safety department that was understaffed

and/or not properly staffed by personnel with the necessary background and experience. It and its management failed to understand and/or was unconcerned with the dangers associated with bauxite dust and its constituents inhalation. It failed to implement and/or implemented substandard air monitoring or testing protocols to measure fugitive and/or bauxite dusts. And it failed to abide applicable OSHA and/or MSHA regulations regarding handling and processing bauxite ore and/or its constituent components and waste products.

47. Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

## Count 4 – Chattel Used to Supplier's Business Purpose

48. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 392 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

49. The Alumina Refinery served Glencore's business purpose during the years of VIALCO's ownership and operation. At all relevant times, Glencore operated a multinational and vertically-integrated alumina refinement portfolio, consisting of mining, shipping, refinement, smelting, and marketing/selling. Those bauxite ore served Glencore's business purposes because it was integral part of the start-to-finish operation.

50. The bauxite ore as ultimately supplied to the Alumina Refinery, where it was crushed, ground, liquified, and disposed of. Glencore should have expected that Plaintiff and other employees at the Alumina Refinery would be endangered by the probable use of the bauxite ore and bauxite dusts, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

51. Glencore failed to exercise reasonable care to make the bauxite ore safe for the use for which it was supplied. It failed to exercise reasonable care to discover the dangerous condition or character of the bauxite ore it supplied. And it failed to inform Plaintiff or the other employees at the

Complaint
*Byron T. Peterson v. Glencore Ltd., et. al.*

Alumina Refinery of the discover the dangerous condition or character of the bauxite ore it supplied.

52. Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

**Count 5 – Negligent Undertaking**

53. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 324A of the Restatement (Second) of Torts, which articulates a sound rule for the Virgin Islands.

54. Glencore undertook to render services to its subsidiary VIALCO. It should have recognized the services it provided to VIALCO were necessary for the protection of Plaintiff generally or in particular.

55. Glencore failed to exercise reasonable care, which increased the risk of harm to Plaintiff. It undertook to perform a duty owed by VIALCO to Plaintiff.

56. Plaintiff suffered harm because VIALCO relied on Glencore to fulfill its undertaking. And he suffered harm because he relied on Glencore to fulfill its undertaking.

57. Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, the refined alumina derived therefrom, caustic fumes, and asbestos.

### CAUSES OF ACTION AGAINST COSMOGONY II, INC. AS SUCCESSOR-IN-INTEREST TO GENERAL ENGINEERING CORP.

**Count 6 – Negligence**

58. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. GEC is liable to Plaintiff as it acted negligently.

59. GEC's services installing, removing, and replacing ACM, which work resulted in the release of asbestos fibers into the air.

Complaint
*Byron T. Peterson v. Glencore Ltd., et. al.*

60. GEC was negligent insofar as it failed to take adequate precautions to guard against and warn of the consequences these releases. Among other things, GEC failed to adequately train its employees on how to recognize and properly dispose of ACM. It failed to adequately warn its employees and those in the vicinity of the dangers of ACM or regarding the use of appropriate PPE.

61. Further, GEC was negligent in its provision of maintenance work. It failed to adequately maintain the various mechanical components at the Alumina Refinery. In particular, the machinery used to convey and pulverize bauxite ore was constantly in poor working order, and as a result, fugitive bauxite emissions were frequent.

62. Both instances of negligent presented foreseeable risks of harm—namely, that Plaintiff, his co-workers, and others would come into contact with and inhale an inordinate amount of ACM and bauxite dust.

63. GEC owed a duty of reasonable care under the circumstances. In this specific case, its duty was to perform its construction and maintenance duties with the due care necessary for a refinery contractor, with the understanding that the materials at the Alumina Refinery were dangerous and required special precautions.

64. However, GEC violated its duty of reasonable care as detailed above.

65. GEC directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and asbestos.

## NOTICE OF PUNITIVE DAMAGES

66.     Plaintiff seeks punitive damages against Defendants.

67.     Defendants' respective failures as described herein were intentional and/or done or with a willful or reckless disregard of the rights of others, including the plaintiff.

68.     An award of punitive damages is warranted to punish the defendants, deter similar conduct by others, encourage others harmed to step forward, and to additionally compensate Plaintiff for the egregious conduct to which he was subjected.

### JURY TRIAL DEMANDED

69.     Plaintiff demands a trial by jury, pursuant to 5 V.I.C. § 358 and Rule 38(b) of the Virgin Islands Rules Civil Procedure, of all issues so triable.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

a.     After trial by jury, he be awarded full monetary damages afforded by law, including punitive damages;

b.     He be awarded pretrial interest from the date of the initial Complaint through final judgment;

c.     He be awarded his costs; and

d.     The Court grant such additional relief as may be deemed just and proper.

Complaint
*Byron T. Peterson v. Glencore Ltd., et. al.*

**DATED:**     March 15, 2023         Respectfully submitted,

Korey A. Nelson, Esq. (V.I. Bar No. 2012)
H. Rick Yelton, Esq. (V.I. Bar No. 2098)
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
ryelton@burnscharest.com


Warren T. Burns, Esq. (V.I. Bar No. 2004)
Daniel H. Charest, Esq. (V.I. Bar No. 2020)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com



J. Russell B. Pate, Esq. (V.I. Bar No. 1124)
THE PATE LAW FIRM
P.O. Box 370
Christiansted, USVI 00821
Telephone: (340) 777-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com

PRESS FIRMLY TO SEAL | SEAL



UNITED STATES POSTAL SERVICE®

USPS TRACKING #

9114 9022 0078 9792 4624 86

FROM:
Pate Law Firm
P.O.B. 370
Christiansted, V.I. 00821



- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

TO:

The Prentice-Hall Corporation System, Inc.
*Registered Agent for:* **GLENCORE LTD.**
251 Little Falls Drive
Wilmington, Delaware 19808

**TRACKED ■ INSURED**


PS00001000014

To schedule free Package Pickup, scan the QR code.



EP14F July 2022
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.